UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:

JEROME GRIGGS BEERY,

    Debtor.                                No. 7-94-10504 SS

YVETTE J. GONZALES, TRUSTEE,

    Plaintiff,

v.                                        Adv. No. 09-1191 S

JEROME GRIGGS BEERY,
JOYCE K. BEERY,
COUNTRYWIDE BANK FSB,
UNITED STATES OF AMERICA, (IRS), and
FIRST NATIONAL BANK OF SANTA FE,

    Defendants.

**MEMORANDUM OPINION IN SUPPORT OF ORDER DENYING
PARTIAL JUDGMENT ON THE PLEADINGS FILED BY FIRST NATIONAL
BANK OF SANTA FE AND COUNTRYWIDE BANK, FSB (DOC 26)**

    The Motion by First National Bank of Santa Fe ("First
National") and Countrywide Bank, FSB ("Countrywide") for Partial
Judgment on the Pleadings as to §549 Avoidance Action Set Forth
[in] Counts I and II ("Motion") (doc 26) has come before the
Court.  Movant Banks have also filed a memorandum brief in
support of their position  (doc 27), the Trustee Yvette Gonzales
has filed a response  (doc 31), and Banks have filed a reply (doc
33).  Having considered the filings, the Court will deny the
Motion.

**Background**

For purposes of deciding the Motion, the following facts are relevant and not disputed by the parties.

1.  Debtor Jerome Beery filed his voluntary chapter 7 petition on February 25, 1994.

2.  At all relevant times, Joyce Beery has been Debtor's spouse.

3.  Yvette Gonzales was appointed as a successor trustee on August 15, 1995.

4.  Trustee recorded a notice of the bankruptcy filing in the real estate records of Los Alamos County, New Mexico on September 13, 1995[1].

5.  The real property at issue – 565 Navajo, Los Alamos, New Mexico ("Los Alamos Residence") - is located in Los Alamos County, New Mexico.

6.  There is no indication that Debtor claimed as exempt an interest in the Los Alamos Residence.[2]

7.  On March 25, 1997, Trustee initiated an earlier adversary proceeding, <u>Gonzales v. Beery et al.</u>, Adv Pro 97-1059, against Debtor, Joyce Beery, Los Alamos National Bank and

_____

[1]This recording, and the recording of the lis pendans, crucially differentiate this case from the 9th Circuit cases relied on by the Banks.

[2] The Court has added this fact based on the record and the parties' filings, which make it obvious that there was no such filing.

others, which sought a determination of the ownership of the Los Alamos Residence.

8. Trustee recorded a notice of <u>lis pendens</u> of AP 97-1059 in the real estate records of Los Alamos County on July 31, 2000.

9. Debtor executed a warranty deed for what had been his interest in the Los Alamos Residence, prior to the filing of the chapter 7 petition, to Joyce Beery on March 4, 2002.

10. The warranty deed from Debtor to Joyce Beery was recorded in the real estate records of Los Alamos County on March 5, 2002.

11. The Court (the Honorable Mark B. McFeeley, United States Bankruptcy Judge for the District of New Mexico, who subsequently transferred the instant adversary proceeding to this judge) issued its findings of fact, conclusions of law and judgment in AP 97-1059, ruling that "[t]he Debtor's undivided one half interest in the Los Alamos Property [565 Navajo] as a joint tenant entered the Debtor's estate at the time he filed his Chapter 7 petition...." <u>Id.</u>, Judgment, at 3 of 5 (AP 97-1059 doc 195). The judgment was appealed, Notice of Appeal (AP 97-1059 doc 197), which appeal was dismissed. Mandate to Dismiss Appeal (AP 97-1059 doc 208).

12. On November 28, 2006, First National and Joyce Beery executed the loan documents whereby First National loaned

Case 09-01191-nlj    Doc 38    Filed 04/15/11    Entered 04/15/11 17:28:35 Page 3 of 21

Joyce Beery $320,000, repayment of which was secured by a mortgage on the Los Alamos Residence.

13. On December 7, 2006, the First National mortgage was recorded in the real estate records of Los Alamos County.

14. In December, 2006 First National sold the loan package to Countrywide.

15. On May 23, 2007, Trustee sent a letter to First National informing First National of the Trustee's position that Debtor had no legal basis for transferring any interest in the Los Alamos Residence and requesting that First National release from the operation of the mortgage the undivided one-half interest of the estate that had belonged to Debtor at the time of the filing of the bankruptcy petition.[3]

16. On December 11, 2007, First National sent a letter to Countrywide notifying Countrywide of Trustee's request.

17. On July 31, 2009 Trustee sent another letter to First National essentially repeating the contents of the May 23, 2007 letter.

18. On August 27, 2009, First National responded to the more recent letter from Trustee saying that it had not responded

---

[3] To be clear, the correspondence went from Trustee's counsel to First National's counsel, as also was the case with other communications between Trustee and First National and other parties.

Page 4 of 21

to the first letter because by the time it had received the first letter, it had sold the loan to Countrywide.

19. On November 23, 2009, Trustee filed the instant adversary proceeding, Adv Pro 09-1191, suing Debtor, Joyce Beery, First National, Countrywide, and the United States Treasury, Internal Revenue Service.[4]

20. The complaint seeks (Count I) a declaratory judgment that because the undivided one-half interest in the Los Alamos Residence that Debtor purported to transfer to Joyce Beery was not effective to transfer anything, Joyce Beery's mortgage to First National was insufficient to – was void as an attempt to - transfer the estate's interest in the Los Alamos Residence; (Count II) quieting of title to the one-half undivided interest in the estate; and (Count III) damages against Debtor and Joyce Beery for slander of title.

**Analysis**

Banks correctly state the law in connection with a motion for judgment on the pleadings.

A motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) is treated as a motion to dismiss under Fed.R.Civ.P. 12(b)(6). McHenry v. Utah Valley Hosp., 927 F.2d 1125, 1126 (10th Cir.1991) cert. denied, 502 U.S. 894, 112 S.Ct. 263, 116 L.Ed.2d 217 (1991) (quoting Bishop v. Federal Intermediate Credit Bank of Wichita, 908 F.2d 658, 663 (10th Cir.1990)), cert. denied, 502 U.S. 894, 112 S.Ct. 263, 116 L.Ed.2d

---

[4] The Internal Revenue Service has filed a disclaimer.  Doc 14.

Case 09-01191-nlj   Doc 38   Filed 04/15/11   Entered 04/15/11 17:28:35 Page 5 of 21

217 (1991). We review the sufficiency of a complaint de novo, and will uphold dismissal "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." <u>Jacobs, Visconsi & Jacobs Co. v. City of Lawrence</u>, 927 F.2d 1111, 1115 (10th Cir.1991). We must accept all well-pleaded allegations in the complaint as true and "construe them in the light most favorable to the plaintiff." <u>Williams v. Meese</u>, 926 F.2d 994, 997 (10th Cir.1991).

<u>Mock v. T.G. & Y. Stores Co.</u>, 971 F.2d 522, 528-29 (10th Cir. 1992).

Banks' argument on the merits is grounded in the notion that Trustee's only bankruptcy cause of action[5] that permits her to obtain a declaration that the actions of Debtor were not effective to transfer the property is §549 of the Code. This section provides as follows:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate--
(1) that occurs after the commencement of the case; and
(2) (A) that is authorized only under section 303(f) or 542(c) of this title; or
    (B) that is not authorized under this title or by the court.

---

[5] Because the parties argue only the invocation and effect of §§ 362 and 549 and not any state law cause of action for, as an example, conversion, the Court does not consider that issue. <u>Cf.</u> <u>Jubber v. Search Market Direct, Inc. (In re Paige)</u>, 413 B.R. 882, 916-19 (Bankr. D. Utah 2009), <u>aff'd</u> <u>Search Market Direct, Inc. v. Jubber (In re Paige)</u>, 443 B.R. 1878 (D. Utah 2011) (unauthorized transfer of estate property constituted conversion under Utah law and therefore transferee creditor did not obtain good title); <u>see also</u> <u>Irwin Mortgage Co. v. Tippett (In re Tippett)</u>, 338 B.R. 82, 85 (9th Cir. BAP 2006) (declining to consider non-bankruptcy remedies such as recovery for a breach of escrow instructions or a claim against the title insurance).

Case 09-01191-nlj    Doc 38    Filed 04/15/11    Entered 04/15/11 17:28:35 Page 6 of 21

(b) In an involuntary case, the trustee may not avoid
under subsection (a) of this section a transfer made
after the commencement of such case but before the
order for relief to the extent any value, including
services, but not including satisfaction or securing of
a debt that arose before the commencement of the case,
is given after the commencement of the case in exchange
for such transfer, notwithstanding any notice or
knowledge of the case that the transferee has.
(c) The trustee may not avoid under subsection (a) of
this section a transfer of an interest in real property
to a good faith purchaser without knowledge of the
commencement of the case and for present fair
equivalent value unless a copy or notice of the
petition was filed, where a transfer of an interest in
such real property may be recorded to perfect such
transfer, before such transfer is so perfected that a
bona fide purchaser of such real property, against whom
applicable law permits such transfer to be perfected,
could not acquire an interest that is superior to such
interest of such good faith purchaser. A good faith
purchaser without knowledge of the commencement of the
case and for less than present fair equivalent value
has a lien on the property transferred to the extent of
any present value given, unless a copy or notice of the
petition was so filed before such transfer was so
perfected.
(d) An action or proceeding under this section may not
be commenced after the earlier of--
     (1) two years after the date of the transfer
     sought to be avoided; or
     (2) the time the case is closed or dismissed.

Banks argue that from whatever point in the chain of

transactions that took place one reasonably locates the

"transfer" that triggers the use of §549, this adversary

proceeding was filed long after two years following the alleged

transfer.  In making the argument, Banks rely on the chronology

of events set out above, and the citation to §549 in the first

Case 09-01191-nlj   Doc 38   Filed 04/15/11   Entered 04/15/11 17:28:35 Page 7 of 21

line of the complaint[6], and Ninth Circuit case law.  Were this
District located in the Ninth Circuit, Banks might well be
successful, but because the Tenth Circuit requires a different
result, the Motion must be denied.

Banks rely on <u>Irwin Mortgage Co. v. Tippett (In re Tippett)</u>,
338 B.R. 82 (9th Cir. BAP 2006) ("<u>BAP Tippett</u>"), <u>aff'd</u>, <u>Burkart</u>
<u>v. Coleman (In re Tippett)</u>, 542 F.3d 684 (9th Cir. 2008)
("<u>Circuit Tippett</u>").  The <u>Tippett</u> cases in turn rely heavily on
<u>Schwartz v. United States (In re Schwartz)</u>, 954 F.2d 569 (9th
Cir. 1992), which in turn relied on the district court case of
<u>Phoenix Bond & Indemnity Co. v. Garcia (In re Garcia)</u>, 109 B.R.
335 (N.D. Ill. 1989).  <u>Schwartz</u> and <u>Garcia</u> address the issue of

---

[6] The Court finds this argument insufficient to change a
result that is dictated by the Code and Tenth Circuit case law.
Indeed, Trustee cited a variety of statutes in that opening line,
and then relied almost only on §362.

whether violations of the automatic stay, listed in §362(a)[7], are void <u>ab initio</u> or merely voidable:

> The sole issue before us is whether creditor violations of the Bankruptcy Code's automatic provision are void or simply voidable.  If violations of the automatic

---

[7] Section 362(a) provides as follows:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
(4) any act to create, perfect, or enforce any lien against property of the estate;
(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

Page 9 of  21

stay are void, the IRS tax assessment made against the
Schwartzes in the Chapter 11 bankruptcy is without
effect. If, however, such violations are merely
voidable, the assessment is valid because the
Schwartzes made no attempt to have the assessment
voided in the Chapter 11 bankruptcy.

<u>Schwartz</u>, 954 F.2d at 570-71. <u>See also</u> <u>Garcia</u>:

> Though acknowledging that the tax sale violated the
> automatic stay, the appellants argue that the
> Bankruptcy Court erred in concluding that acts in
> violation of the automatic stay are void. Rather,
> appellants contend that acts in violation of the
> automatic stay are merely voidable, provided they are
> avoided with the time period provided in § 549(d),
> which governs the avoidance of post-petition
> transactions not otherwise authorized by the Bankruptcy
> Code or court order.

<u>Garcia</u>, 109 B.R. at 337 (footnote omitted).

In each case, the court concluded that the creditors'

actions at issue violated the stay and were void, not voidable.

But in analyzing the void/voidable issue, the <u>Garcia</u> court, and

the <u>Schwartz</u> court following <u>Garcia</u>, struggled to find a role for

§ 549 against the background of §362(a) (and in the face of the

creditor arguments that what they had done was not void but

voidable, and the trustee or debtor in possession in each case

had failed to timely avoid the transactions). That is, some

courts had ruled that if violations of §362(a) were void, there

would be no role for the avoidance action provided by §549,

making §549 superfluous or effectively devoid of content (as

explained most clearly in <u>Schwartz</u>, 954 F.2d at 573-74). Thus,

those courts had concluded that violations of §362(a) must be

Case 09-01191-nlj   Doc 38   Filed 04/15/11   Entered 04/15/11 17:28:35 Page 10 of 21

voidable rather than void. <u>E.g.</u>, <u>Sikes v. Global Marine, Inc.</u>, 881 F.2d 176, 178-79 (5th Cir. 1989); <u>compare</u> <u>Easley v. Pettibone Michigan Corp.</u>, 990 F.2d 905, 910 (6th Cir. 1993) (actions taken in violation of automatic stay are "invalid" and voidable, and shall be voided absent limited equitable circumstances).

So it was in this context that the <u>Garcia</u> court contrived a solution to the problem it saw:

> Holding that, absent specific statutory exception, <u>see, e.g.</u>, §549(c), actions in violation of the automatic stay are void, rather than merely voidable, is not as appellants contend, necessarily irreconcilable with §549, which requires that actions by he trustee to avoid posts-petition transactions be commenced the earlier of the time the bankruptcy case is closed or dismissed or two years after the transaction sought to be avoided. §362(a) prevents creditors from dismembering the bankruptcy estate through actions which do not require the post-petition cooperation or consent of the debtor. Concluding that §549(d) does not limit the period in which a transfer may be challenged as in violation of §362(a) does not render §549(d) a nullity, but rather leaves an entire realm of p§549(d). These are post-petition transfers in which the debtor is a willing participant but which, though not prohibited by the automatic stay, are not otherwise authorized by the Bankruptcy Code.

<u>Garcia</u>, 109 B.R. at 339 (citation and footnotes omitted).

<u>Schwartz</u> adopted this approach:

> On the surface, [the supposed conflict between §§549 and 362] appears troublesome. However, a straightforward analysis of section 549 reveals that it is not intended to cover the same type of actions prohibited by the automatic stay nor rendered moot by section 362's voiding of all automatic stay violations. Section 549 applies to unauthorized transfers of estate property which are not otherwise prohibited by the Code. <u>Garcia</u>, 109 B.R. at 338-40; <u>In re R & L Cartage & Sons</u>, 118 B.R. 646, 650-51 (Bankr. N.D. Ind. 1990)

Page 11 of 21

> (adopting <u>Garcia</u> analysis).  In most circumstances,
> section 549 applies to transfers in which the debtor is
> a willing participant.  <u>See</u> <u>Garcia</u>, 109 B.R. at 339.
> For example, in a transfer unrelated to any antecedent
> debt, the debtor may sell a portion of the estate's
> property to a third person. The trustee has the power
> to avoid such a transfer under section 549.
> Section 362's automatic stay does not apply to sales or
> transfers of property initiated by the debtor.  Thus,
> section 549 has a purpose in bankruptcy beyond the
> potential overlap with section 362.  In other words,
> the automatic stay can void any violation and still
> leave section 549 with a valid and important role in
> bankruptcy.  Section 549 exists as a protection for
> creditors against unauthorized debtor transfers of
> estate property.  Although there are circumstances
> where section 362 overlaps section 549 and renders it
> unnecessary, this overlap falls far short of rendering
> section 549 meaningless.

<u>Schwartz</u>, 954 F.2d at 573-574.

In each case, <u>Garcia</u> and <u>Schwartz</u>, the transactions that
were (successfully) challenged occurred when the debtors were
debtors in possession in chapter 11 cases.  <u>Garcia</u>, 109 B.R. at
336; <u>Schwartz</u>, 954 F.2d at 570.  Nevertheless both courts in
their discussions refer only to "debtors" rather than debtors in
possession.  And  in neither case did the debtors themselves take
any action that constituted the transfer in question.  <u>Garcia</u>,
109 B.R. at 336 (public sale of estate property for past due real
estate taxes); <u>Schwartz</u>, 954 F.2d at 570 (IRS assessment of 100%
tax penalty postpetition).

Given its (perhaps too loose) phrasing, the <u>Garcia/Schwartz</u>
argument appears to have led the Ninth Circuit courts astray.
Leading up to those cases, the Tippetts, after filing their

chapter 7 case, hired a realtor and sold their home without
anyone's permission.  <u>BAP Tippett</u> at 83.  Unfortunately for the
chapter 7 trustee (and the unsecured creditors), the trustee had
failed to record a notice of the filing of the bankruptcy case in
Sacramento County, California, where the property was located.
<u>Id.</u> at 84; <u>Circuit Tippett</u> at 686.  In consequence, the purchaser
apparently took for value and in good faith.  Shortly after the
sale the chapter 7 trustee filed an action seeking turnover under
§542 (and not §549), to quiet title, and to avoid the liens of
purchaser's mortgagees.  The purchaser and the mortgagees sought
an annulment of the stay to retroactively validate their
purchase.  The bankruptcy court denied annulment, and granted
judgment for the Trustee in the adversary proceeding.

    The BAP reversed, holding that "[t]he proposition is that
since Congress provided a mechanism to undo (or avoid) a transfer
of estate property, it obviously contemplated that there could be
an unauthorized transfer of estate property postpetition."  <u>BAP
Tippett</u> at 86.  The court went on to reason that if every
exercise of control over estate property which was not excepted
from operation of the stay or was unauthorized constituted a
violation of the stay and was therefore void, there could never
be a postpetition unauthorized transfer to be undone.  And that

Case 09-01191-nlj   Doc 38   Filed 04/15/11   Entered 04/15/11 17:28:35 Page 13 of 21

would make §549 largely meaningless as well.  <u>BAP Tippett</u> at 86-87.[8]

But unlike the Garcias and the Schwartzes, the Tippetts were never in charge of their bankruptcy estate.  In consequence, there was never a basis for arguing that they acted on behalf of the estate.  And that was a crucial difference between the underlying facts in <u>Garcia</u> and <u>Schwartz</u> on the one hand and the <u>Tippett</u> cases on the other hand.  And of course, to the extent that <u>Garcia</u> and <u>Schwartz</u> do not distinguish between debtors versus debtors in possession, they also state the principle so broadly that they are incorrectly decided.

In their repeated citations to one of the purposes of the automatic stay – to protect the estate from being dismembered by creditors - these cases appear to overlook the obvious: the trustee is also entitled to the protection of the automatic stay in order to preserve the estate intact.  That is, in a chapter 7 case, a debtor can wreak as much havoc on the estate as can a creditor (as amply illustrated by these proceedings).  In consequence, there is nothing in §362(a) which says that its provisions are limited only to creditors and in the process

---

[8] <u>Circuit Tippett</u> dealt largely with the issue of the California state recording statute, which provides for first in time priority, not being preempted by the Code.  <u>Id.</u>, 542 F.3d at 689-690.

excepting chapter 7 debtors (or chapter 11 debtors out of possession) from §362's prohibitions.

As for the concerns that treating any violation of §362(a) as void will leave nothing for §549, one could easily imagine a situation in which a debtor in possession on behalf of the estate and therefore not as a third party (the category of such third parties including creditors but also an out of possession debtor whether in chapter 7 or chapter 11), uses cash collateral without the agreement of the parties having an interest in the cash collateral and without court approval, and then finds the case in the charge of a chapter 7 or chapter 11 trustee (whether due to the improper use of cash collateral or for any other reason justifying conversion or the appointment of a trustee), and the trustee pursuing an action under §549 to recover payments made pursuant to the use of illegal cash collateral. That is exactly what happened in Marathon Petroleum Co., LLC v. Cohen (In re Delco Oil, Inc.), 599 F.3d 1255 (11th Cir. 2010) (affirming judgment requiring creditor to return cash to estate pursuant to §§549(a) and 363(c)(2) arising from debtor in possession's unauthorized use of cash collateral). Delco Oil is an example of an appropriate use of §549 by a trustee because the transfer by the former debtor in possession of the cash collateral would not have been authorized by statute but also not have been a violation of the automatic stay.

From what has been said, it is also clear that whether the debtor was a "willing participant" in the alleged transfer makes no difference, and does not convert an attempted transfer in violation of the automatic stay into a transfer only voidable by §549. Contra Paige, 413 B.R. at 915. This follows because there is nothing in §362(a) which provides any basis for treating a chapter 7 debtor attempting to transfer property of the estate any differently than a creditor attempting to do the same.

The Tenth Circuit has repeatedly ruled that actions taken in violation of the stay are void ab initio, not merely voidable. Ellis v. Consolidated Diesel Electric Corp., 894 F.2d 371, 372 (10th Cir. 1990) (summary judgment for defendants in product liability action void when it was entered by district court after defendants had filed chapter 11 petitions; plaintiffs' appeal of summary judgment dismissed for lack of properly entered final judgment); Franklin Sav. Assoc. v. Office of Thrift Supervision, 31 F.3d 1020, 1022 (10th Cir. 1994) (bill of costs submitted in district court case postpetition; request for annulment of stay denied and government required to resubmit bill of costs); Goldston v. United States (In re Goldston), 104 F.3d 1198, 1201 (10th Cir. 1997) (IRS assessment in violation of stay during chapter 11 case was void in subsequent chapter 13 case; "void is void, whatever the context". Sanction was for IRS to lose its secured status.); see Kalb v. Feuerstein, 308 U.S. 433, 438

(1940) (Wisconsin state court did not have jurisdiction to confirm sheriff's sale and dispossess farmer debtors who had filed bankruptcy petition). The Bankruptcy Court for the District of Utah summarized it well:

> In the Tenth Circuit, actions taken in violation of the automatic stay are void ab initio, and knowledge of the stay on the part of the offending party is irrelevant. As such, they are without legal effect. From the law's point of view, they simply did not happen.

Paige, 413 B.R. at 915 (footnotes omitted).

The one arguable exception to this long list of Tenth Circuit cases is Calder v. Job (In re Calder), 907 F.2d 953, 956-57 (10th Cir. 1990). In that case the debtor engaged in lengthy state court litigation with a third party who was unaware of the bankruptcy filing, and it was only about having a judgment entered against him in the state court matter that debtor Calder informed the third party that he had been in bankruptcy all along and thus the state court litigation and judgment were all void. In those circumstances, essentially on equitable or "clean hands" grounds, the Tenth Circuit refused to enforce the stay.

Strictly speaking, none of the Tenth Circuit cases involved an out-of-possession debtor who "willingly" violated the automatic stay, as did the Tippetts.[9] So it is conceivable that

---

[9] Although the Paige courts, particularly the bankruptcy court, discussed the effect of an out-of-possession debtor who "willingly participates" in an attempted unauthorized transfer of estate property and stated that in those circumstances the
(continued...)

Case 09-01191-nlj    Doc 38    Filed 04/15/11    Entered 04/15/11 17:28:35 Page 17 of 21

the Tenth Circuit, faced with exactly these facts, might take the same position as the <u>Tippetts</u> cases.  But given the single strand that runs through all the Tenth Circuit cases of declaring stay violations void <u>ab initio</u>, and given the needless conceit that the <u>Tippetts</u> cases and their provenance have created based on misconstruing the Code, that would seem to be quite unlikely. Particularly is that the case here where an out-of-possession (chapter 7) debtor has acted to cause so much mischief for so many parties.

Nor is the Tenth Circuit likely to yield to other circuits that view stay violations are voidable rather than void.  For example, in <u>Sikes v. Global Marine, Inc.</u>, 881 F.2d 176, 178-79 (5th Cir. 1989), plaintiffs/appellants had filed a personal injury claim against defendant who had, unknown to plaintiffs, filed a chapter 11 petition.  Defendant maneuvered to preclude the modification of the stay to allow the refiling of the complaint until after the statute of limitations had passed.  The Fifth Circuit, in a divided ruling, first held that "the term 'void' can only be properly applied to those [transactions] ... that are of no effect whatsoever, mere nullities, ... and therefore incapable of confirmation or ratification."  <u>Id.</u> at 178

---

[9](...continued)
transfer would be voidable by §549, rather than void, 413 B.R. at 913-14 (citing <u>Garcia</u>) (bankruptcy court case), the bankruptcy court found that there was no willing participation by the debtor and therefore §549 was not applicable.  <u>Id.</u> at 915.

Case 09-01191-nlj   Doc 38   Filed 04/15/11   Entered 04/15/11 17:28:35 Page 18 of 21

(quotation marks and citation omitted). The court also held that the bankruptcy court had modified the stay after the fact (though this was disputed by the dissent), which it could not do if the stay violations were void rather than voidable. On that basis, the court held generally that violations of the stay are voidable, not void, and found support for its reasoning in the existence of §549.

The Tenth Circuit case law, e.g., Franklin Sav. Assoc. v. Office of Thrift Supervision and In re Goldston, in which the courts consider as possible but then reject requests to annul the stay after the fact, resolves that dilemma. In addition, Calder provides sufficient support for dealing with the one-off case in which a debtor has (or, for that matter, a trustee might have) so gamed the system that a rigid application of the "void" principle would be unfair.

Similarly, in Easley v. Pettibone Michigan Corp., 990 F.2d 905 (6th Cir. 1993), plaintiff/appellant filed an action, just days before the statue of limitations was to expire, against defendant/debtor in possession after the latter in 1986 had filed a chapter XI [sic] petition. Id. at 907. Debtor confirmed a plan permitting personal injury actions to go forward, and then removed the Easley action to the United States District Court. There, it moved to dismiss the action based on the fact that the original filing was in violation of the stay. The district court

Case 09-01191-nlj    Doc 38    Filed 04/15/11    Entered 04/15/11 17:28:35 Page 19 of 21

refused to dismiss the action. The reorganized debtor then took an interlocutory appeal, asserting that the district court had no jurisdiction over the removed action. The Sixth Circuit held that the action, filed postpetition, could not be considered commenced until the stay had been modified by the bankruptcy court, and that debtor could raise this issue in the removed proceeding in the district court, id. at 908, and that plaintiff's failure to timely refile, when he had been informed of the void filing, cost him his right to sue. Id. at 912. The court ruled that "actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances." Id. at 911.

The Sixth Circuit's position is in practice remarkably similar to that of the Tenth Circuit, as illustrated in part by its favorable citation to Calder. Thus, despite the use of terms such as "invalid" and "voidable", the Sixth Circuit's position would not be likely to alter that of the Tenth Circuit.

**Conclusion**

For the foregoing reasons, the Court finds that the Motion by First National Bank of Santa Fe and Countrywide Bank, FSB for Partial Judgment on the Pleadings as to §549 Avoidance Action Set Forth [in] Counts I and II (doc 26) is not well taken and will be denied.



James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:  April 15, 2011

Copies to:

William J Arland, III
PO Box 1089
Santa Fe, NM 87504-1357

Clifford C Gramer, Jr
3733 Eubank Blvd NE
Albuquerque, NM 87111-3536