UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
JEROME GRIGGS BEERY,
    Debtor.                          No. 7-94-10504 SS

YVETTE J. GONZALES, TRUSTEE,
    Plaintiff,
v.                                 Adv. No. 09-1191 S
JEROME GRIGGS BEERY,
JOYCE K. BEERY,
COUNTRYWIDE BANK FSB,
UNITED STATES OF AMERICA, (IRS), and
FIRST NATIONAL BANK OF SANTA FE,
    Defendants.

**AMENDED MEMORANDUM OPINION IN SUPPORT OF ORDER DENYING
PARTIAL JUDGMENT ON THE PLEADINGS FILED BY FIRST NATIONAL
<u>BANK OF SANTA FE AND COUNTRYWIDE BANK, FSB (DOC 26)</u>**

    The Motion by First National Bank of Santa Fe ("First

National") and Countrywide Bank, FSB ("Countrywide") for Partial

Judgment on the Pleadings as to §549 Avoidance Action Set Forth

[in] Counts I and II ("Motion") (doc 26) has come before the

Court.[1]  Movant Banks have also filed a memorandum brief in

support of their position  (doc 27), the Trustee Yvette Gonzales

has filed a response  (doc 31), and Banks have filed a reply (doc

33).  Having considered the filings, the Court will deny the

Motion.

**<u>Background</u>**

---

    [1] The Court is issuing this amended memorandum opinion,
which replaces the Memorandum Opinion in Support of Order Denying
Partial Judgment on the Pleadings filed by First National Bank of
Santa Fe and Countrywide Bank, FSB (doc 38), on its own motion
pursuant to F.R.B.P. 9023.

For purposes of deciding the Motion, the following facts are relevant and not disputed by the parties.

1. Debtor Jerome Beery filed his voluntary chapter 7 petition on February 25, 1994.

2. At all relevant times, Joyce Beery has been Debtor's spouse.

3. Yvette Gonzales was appointed as a successor trustee on August 15, 1995.

4. Trustee recorded a notice of the bankruptcy filing in the real estate records of Los Alamos County, New Mexico on September 13, 1995.

5. The real property at issue – 565 Navajo, Los Alamos, New Mexico ("Los Alamos Residence") - is located in Los Alamos County, New Mexico.

6. There is no indication that Debtor claimed as exempt an interest in the Los Alamos Residence.[2]

7. On March 25, 1997, Trustee initiated an earlier adversary proceeding, <u>Gonzales v. Beery et al.</u>, Adv Pro 97-1059, against Debtor, Joyce Beery, Los Alamos National Bank and others, which sought a determination of the ownership of the Los Alamos Residence.

---

[2] The Court has added this fact based on the record and the parties' filings, which make it obvious that there was no such filing.

8.   Trustee recorded a notice of _lis pendens_ of AP 97-1059 in the real estate records of Los Alamos County on July 31, 2000.

9.   Debtor executed a warranty deed for what, prior to the filing of the chapter 7 petition, had been his undivided one-half interest in the Los Alamos Property, to Joyce Beery on March 4, 2002.

10.  The warranty deed from Debtor to Joyce Beery was recorded in the real estate records of Los Alamos County on March 5, 2002.

11.  The Court (the Honorable Mark B. McFeeley, United States Bankruptcy Judge for the District of New Mexico, who subsequently transferred the instant adversary proceeding to this judge) issued its findings of fact, conclusions of law and judgment in AP 97-1059 on July 14, 2003, ruling that "[t]he Debtor's undivided one half interest in the Los Alamos Property [565 Navajo] as a joint tenant entered the Debtor's estate at the time he filed his Chapter 7 petition...." _Id._, Judgment, at 3 of 5 (AP 97-1059 doc 195). The judgment was appealed, Notice of Appeal (AP 97-1059 doc 197), which appeal was dismissed. Mandate to Dismiss Appeal (AP 97-1059 doc 208).

12.  On November 28, 2006, First National and Joyce Beery executed the loan documents whereby First National loaned

Case 09-01191-nlj   Doc 40   Filed 04/22/11   Entered 04/22/11 09:07:11 Page 3 of 22

Joyce Beery $320,000, repayment of which was secured by a mortgage on the Los Alamos Property.

13. On December 7, 2006, the First National mortgage was recorded in the real estate records of Los Alamos County.

14. In December, 2006 First National sold the loan package to Countrywide.

15. On May 23, 2007, Trustee sent a letter to First National informing First National of the Trustee's position that Debtor had no legal basis for transferring any interest in the Los Alamos Property and requesting that First National release from the operation of the mortgage the undivided one-half interest of the estate that had belonged to Debtor at the time of the filing of the bankruptcy petition.[3]

16. On December 11, 2007, First National sent a letter to Countrywide notifying Countrywide of Trustee's request.

17. On July 31, 2009 Trustee sent another letter to First National essentially repeating the contents of the May 23, 2007 letter.

18. On August 27, 2009, First National responded to the more recent letter from Trustee saying that it had not responded

---

[3] To be clear, the correspondence went from Trustee's counsel to First National's counsel, as also was the case with other communications between Trustee and First National and other parties.

Case 09-01191-nlj    Doc 40    Filed 04/22/11    Entered 04/22/11 09:07:11 Page 4 of 22

to the first letter because by the time it had received the first letter, it had sold the loan to Countrywide.

19. On November 23, 2009, Trustee filed the instant adversary proceeding, Adv Pro 09-1191, suing Debtor, Joyce Beery, First National, Countrywide, and the United States Treasury, Internal Revenue Service.[4]

20. The complaint seeks (Count I) a declaratory judgment that because the undivided one-half interest in the Los Alamos Property that Debtor purported to transfer to Joyce Beery was not effective to transfer anything, Joyce Beery's mortgage to First National was insufficient to – was void as an attempt to - transfer the estate's interest in the Los Alamos Property; (Count II) quieting of title to the one-half undivided interest in the estate; and (Count III) damages against Debtor and Joyce Beery for slander of title.

**Analysis**

Banks correctly state the law in connection with a motion for judgment on the pleadings.

> A motion for judgment on the pleadings under
> Fed.R.Civ.P. 12(c) is treated as a motion to dismiss
> under Fed.R.Civ.P. 12(b)(6). <u>McHenry v. Utah Valley
> Hosp.</u>, 927 F.2d 1125, 1126 (10th Cir.1991) cert.
> denied, 502 U.S. 894, 112 S.Ct. 263, 116 L.Ed.2d 217
> (1991) (quoting <u>Bishop v. Federal Intermediate Credit
> Bank of Wichita</u>, 908 F.2d 658, 663 (10th Cir.1990)),
> cert. denied, 502 U.S. 894, 112 S.Ct. 263, 116 L.Ed.2d

---

[4] The Internal Revenue Service has filed a disclaimer. Doc 14.

Case 09-01191-nlj   Doc 40   Filed 04/22/11   Entered 04/22/11 09:07:11 Page 5 of 22

217 (1991). We review the sufficiency of a complaint de novo, and will uphold dismissal "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." Jacobs, Visconsi & Jacobs Co. v. City of Lawrence, 927 F.2d 1111, 1115 (10th Cir.1991). We must accept all well-pleaded allegations in the complaint as true and "construe them in the light most favorable to the plaintiff." Williams v. Meese, 926 F.2d 994, 997 (10th Cir.1991).

Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 528-29 (10th Cir. 1992).

Banks' argument on the merits is grounded in the notion that Trustee's only bankruptcy cause of action[5] that permits her to obtain a declaration that the actions of Debtor were not effective to transfer the property is §549 of the Code. This section provides in relevant part as follows:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate--
> (1) that occurs after the commencement of the case; and
> (2)  (A)  that is authorized only under section 303(f) or 542(c) of this title; or
>       (B)  that is not authorized under this title or by the court.

---

[5] Because the parties at this stage argue only the invocation and effect of §§362 and 549 and not any state law cause of action for, as an example, quiet title or conversion, the Court does not now consider any such state law causes of action.  Cf. Jubber v. Search Market Direct, Inc. (In re Paige), 413 B.R. 882, 916-19 (Bankr. D. Utah 2009), aff'd Search Market Direct, Inc. v. Jubber (In re Paige), 443 B.R. 1878 (D. Utah 2011) (unauthorized transfer of estate property constituted conversion under Utah law and therefore transferee creditor did not obtain good title); see also Irwin Mortgage Co. v. Tippett (In re Tippett), 338 B.R. 82, 85 (9th Cir. BAP 2006) (declining to consider non-bankruptcy remedies such as recovery for a breach of escrow instructions or a claim against the title insurance).

Page 6 of  22

...
(c) The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.
(d) An action or proceeding under this section may not be commenced after the earlier of--
      (1) two years after the date of the transfer sought to be avoided; or
      (2) the time the case is closed or dismissed.

Banks argue that from whatever point in the chain of transactions that took place one reasonably locates the "transfer" that triggers the use of §549, this adversary proceeding was filed long after two years following the alleged transfer. (A corollary of the Bank's position is that §549(c) does not come into play if Trustee is barred from pursuing §549(a) relief.) In making the argument, Banks rely on the chronology of events set out above, the citation to §549 in the first line of the complaint[6], and Ninth Circuit case law. Were

---

[6] The Court finds this argument insufficient to change a result that is dictated by the Code and Tenth Circuit case law. Indeed, Trustee cited a variety of statutes in that opening line,
(continued...)

this district located in the Ninth Circuit, Banks might well be
successful, but because the Tenth Circuit requires a different
result, the Motion must be denied.[7]

Banks rely on Irwin Mortgage Co. v. Tippett (In re Tippett),
338 B.R. 82 (9th Cir. BAP 2006) ("BAP Tippett"), aff'd, Burkart
v. Coleman (In re Tippett), 542 F.3d 684 (9th Cir. 2008)
("Circuit Tippett").  The Tippett cases in turn rely heavily on
Schwartz v. United States (In re Schwartz), 954 F.2d 569 (9th
Cir. 1992), which in turn relied on the district court case of
Phoenix Bond & Indemnity Co. v. Garcia (In re Garcia), 109 B.R.
335 (N.D. Ill. 1989).  Schwartz and Garcia address the issue of
whether violations of the automatic stay, listed in §362(a), are
void ab initio or merely voidable.

Section 362(a) provides in relevant part as follows:

(a) Except as provided in subsection (b) of this
section, a petition filed under section 301, 302, or

---

[6](...continued)
and then relied almost only on §362.

[7] Much of the case law discussed in this memorandum opinion
and directly or indirectly relied on by Banks dates from prior to
the passage of the Bankruptcy Abuse Prevention and Consumer
Protection Act of 2005, P.L. 109-8 (2005).  BAPCPA amended
§362(b) to add subsection (24), which excepts from the operation
of the automatic stay "any transfer that is not avoidable under
section 544 and that is not avoidable under section 549."
Because the purported transfer from Debtor to Joyce Beery and
Trustee's recordings in the Los Alamos County real estate records
occurred prior to the enactment of BAPCPA, §362(b)(24) is not
applicable to this matter, and the parties have not argued
otherwise.

Case 09-01191-nlj    Doc 40    Filed 04/22/11    Entered 04/22/11 09:07:11 Page 8 of 22

303 of this title ... operates as a stay, <u>applicable to all entities</u>, of—
...
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;....

(Emphasis added.)

The sole issue before us is whether creditor violations of the Bankruptcy Code's automatic provision are void or simply voidable. If violations of the automatic stay are void, the IRS tax assessment made against the Schwartzes in the Chapter 11 bankruptcy is without effect. If, however, such violations are merely voidable, the assessment is valid because the Schwartzes made no attempt to have the assessment voided in the Chapter 11 bankruptcy.

<u>Schwartz</u>, 954 F.2d at 570-71. <u>See also</u> <u>Garcia</u>:

Though acknowledging that the tax sale violated the automatic stay, the appellants argue that the Bankruptcy Court erred in concluding that acts in violation of the automatic stay are void. Rather, appellants contend that acts in violation of the automatic stay are merely voidable, provided they are avoided within the time period provided in § 549(d), which governs the avoidance of post-petition transactions not otherwise authorized by the Bankruptcy Code or court order.

<u>Garcia</u>, 109 B.R. at 337 (footnote omitted).

In each case, the court concluded that the creditors' actions at issue violated the stay and were void, not voidable. But in analyzing the void/voidable issue, the <u>Garcia</u> court, and the <u>Schwartz</u> court following <u>Garcia</u>, struggled to find a role for §549 against the background of §362(a), and in the face of the creditor arguments that what they had done was not void but voidable, and the trustee or debtor in possession in each case

had failed to timely avoid the transactions.  That is, some courts had ruled that if violations of §362(a) were void, there would be no role for the avoidance action provided by §549, making §549 superfluous or effectively devoid of content (as explained most clearly in Schwartz, 954 F.2d at 573-74).  Thus, those courts had concluded that violations of §362(a) must be voidable rather than void.  E.g., Sikes v. Global Marine, Inc., 881 F.2d 176, 178-79 (5th Cir. 1989); Jones v. Garcia (In re Jones), 63 F.3d 411, 412 and n. 3 (5th Cir. 1995) (listing cases and explaining "voidability" particularly in the context of annulling of the stay as permitted by §362(d)); compare Easley v. Pettibone Michigan Corp., 990 F.2d 905, 910 (6th Cir. 1993) (actions taken in violation of automatic stay are "invalid" and voidable, but shall be voided absent limited equitable circumstances).

So it was in this context that the Garcia court contrived a solution to the problem it saw:

> Holding that, absent specific statutory exception, see, e.g., §549(c), actions in violation of the automatic stay are void, rather than merely voidable, is not as appellants contend, necessarily irreconcilable with §549, which requires that actions by the trustee to avoid post-petition transactions be commenced the earlier of the time the bankruptcy case is closed or dismissed or two years after the transaction sought to be avoided.  §362(a) prevents creditors from dismembering the bankruptcy estate through actions which do not require the post-petition cooperation or consent of the debtor.  Concluding that §549(d) does not limit the period in which a transfer may be challenged as in violation of §362(a) does not render

Case 09-01191-nlj    Doc 40    Filed 04/22/11    Entered 04/22/11 09:07:11 Page 10 of 22

§549(d) a nullity, but rather leaves an entire realm of of post-petition transfers subject to the time limitations on avoidance contained in §549(d). These are post-petition transfers in which the debtor is a willing participant but which, though not prohibited by the automatic stay, are not otherwise authorized by the Bankruptcy Code.

Garcia, 109 B.R. at 339 (citation and footnotes omitted).

Schwartz adopted this approach:

On the surface, [the supposed conflict between §§549 and 362] appears troublesome. However, a straightforward analysis of section 549 reveals that it is not intended to cover the same type of actions prohibited by the automatic stay nor rendered moot by section 362's voiding of all automatic stay violations. Section 549 applies to unauthorized transfers of estate property which are not otherwise prohibited by the Code. Garcia, 109 B.R. at 338-40; In re R & L Cartage & Sons, 118 B.R. 646, 650-51 (Bankr. N.D. Ind. 1990) (adopting Garcia analysis). In most circumstances, section 549 applies to transfers in which the debtor is a willing participant. See Garcia, 109 B.R. at 339. For example, in a transfer unrelated to any antecedent debt, the debtor may sell a portion of the estate's property to a third person. The trustee has the power to avoid such a transfer under section 549. Section 362's automatic stay does not apply to sales or transfers of property initiated by the debtor. Thus, section 549 has a purpose in bankruptcy beyond the potential overlap with section 362. In other words, the automatic stay can void any violation and still leave section 549 with a valid and important role in bankruptcy. Section 549 exists as a protection for creditors against unauthorized debtor transfers of estate property. Although there are circumstances where section 362 overlaps section 549 and renders it unnecessary, this overlap falls far short of rendering section 549 meaningless.

Schwartz, 954 F.2d at 573-574.

In each case, Garcia and Schwartz, the transactions that were challenged occurred when the debtors were debtors in

Page 11 of  22

possession in chapter 11 cases. Garcia, 109 B.R. at 336; Schwartz, 954 F.2d at 570. Nevertheless both courts in their discussions refer only to "debtors" rather than debtors in possession. And in neither case did the debtors themselves take any action that constituted the transfer in question. Garcia, 109 B.R. at 336 (public sale of estate property for past due real estate taxes); Schwartz, 954 F.2d at 570 (IRS assessment of 100% tax penalty postpetition).

But given the (perhaps too loose) phrasing used by both courts, the Garcia/Schwartz argument appears to have led the Ninth Circuit courts astray. The Tippetts, after filing their chapter 7 case, hired a realtor and sold their home without anyone's permission. BAP Tippett at 83. Unfortunately for the chapter 7 trustee (and the unsecured creditors), the trustee had failed to record a notice of the filing of the bankruptcy case in Sacramento County, California, where the property was located. Id. at 84; Circuit Tippett at 686. In consequence, the purchaser apparently took for value and in good faith. Shortly after the sale the chapter 7 trustee filed an action seeking turnover under §542 (and not §549), to quiet title, and to avoid the liens of purchaser's mortgagees. The purchaser and the mortgagees sought an annulment of the stay to retroactively validate their purchase. The bankruptcy court denied annulment, and granted judgment for the Trustee in the adversary proceeding.

Case 09-01191-nlj   Doc 40   Filed 04/22/11   Entered 04/22/11 09:07:11 Page 12 of 22

The BAP reversed, holding that "[t]he proposition is that since Congress provided a mechanism to undo (or avoid) a transfer of estate property, it obviously contemplated that there could be an unauthorized transfer of estate property postpetition." BAP Tippett at 86. The court went on to reason that if every exercise of control over estate property which was not excepted from operation of the stay or was unauthorized constituted a violation of the stay and was therefore void, there could never be a postpetition unauthorized transfer to be undone. And that would make §549 largely meaningless as well. BAP Tippett at 86-87.[8]

But unlike the Garcias and the Schwartzes, the Tippetts were never in charge of their bankruptcy estate. In consequence, there was never a basis for arguing that they acted on behalf of the estate. That was a crucial difference between the underlying facts in Garcia and Schwartz on the one hand and the Tippett cases on the other hand. Thus, to the extent that Garcia and Schwartz do not distinguish between debtors versus debtors in possession, those cases also state the principle too broadly to be taken at face value.

_____

[8] Circuit Tippett dealt largely with the Code not preempting the California state recording statute, which provides for first in time filing determining the priority of the lien claims. Id., 542 F.3d at 689-690.

Case 09-01191-nlj   Doc 40   Filed 04/22/11   Entered 04/22/11 09:07:11 Page 13 of 22

In their repeated citations to one of the purposes of the automatic stay – to protect the estate from being dismembered by creditors - the Garcia, Schwartz and Tippett cases appear to overlook the obvious: it is also the trustee who is entitled to the protection of the automatic stay in order to preserve the estate intact. That is, in a chapter 7 case, a debtor can wreak as much havoc on the estate as can a creditor (as amply illustrated by these proceedings). In consequence, there is nothing in §362(a) which says that its provisions are limited only to creditors and in the process excepting chapter 7 debtors (or chapter 11 debtors out of possession) from the prohibitions of §362(a).

It is well accepted that the automatic stay not only protects the debtor's attempt to repay his debts or reorganize his financial affairs by giving the debtor a respite from creditor demands, In re Parr Meadows Racing Assn., 880 F.2d 1540, 1545 (2nd Cir.1989); In re Ionosphere Clubs, Inc., 105 B.R. 765, 771 (S.D.N.Y.1989), but it also protects creditors by preventing dismemberment of the estate. Martin-Trigona v. Champion Federal Savings and Loan Asso., 892 F.2d 575, 577 (7th Cir.1989); In re Sky Group International, Inc., 108 B.R. 86, 89 (Bankr.W.D.Pa.1989). Purposely, the automatic stay maintains the status quo, to ensure an orderly distribution of estate assets, In re Vitreous Steel Products Co., 911 F.2d 1223, 1231-32 (7th Cir.1990); In re Dohm, 14 B.R. 701, 702 (Bankr.N.D.Ill.1981), and, more importantly, facilitate the administration of the estate by allowing the court to resolve claims and distribute assets in accord with priorities recognized in the Code. Vitreous Steel Products Co., 911 F.2d at 1231-32. The majority of Circuit Court cases hold that acts in violation of the automatic stay are void and without effect. In re Calder, 907 F.2d 953, 956 (10th Cir.1990); In re Taylor, 884 F.2d 478, 483 (9th Cir.1989); In re Smith,

Page 14 of 22

> 876 F.2d 524, 525–26 (6th Cir.1989); In re Ward, 837
> F.2d 124, 126 (3rd Cir.1988). The court will not
> tolerate unauthorized acts by debtors or creditors by
> allowing possession of, or facilitating the exercise of
> control over, or permitting the dismemberment of
> property of the estate outside the provisions of the
> Code. To do so would make a nullity of § 362 and what
> it attempts to accomplish as well as invite horrendous
> fraud upon the court.

Yorke v. Citibank, N.A. (In re BNT Terminals, Inc.), 125 B.R.

963, 971 (Bankr. N.D. Ill. 1991).

As for concerns that treating any violation of §362(a) as

void will leave nothing for §549, one could easily imagine a

situation in which a debtor in possession on behalf of the estate

and therefore not as a third party (the category of such third

parties including creditors but also an out of possession debtor

whether in chapter 7 or chapter 11), uses cash collateral without

the agreement of the parties having an interest in the cash

collateral and without court approval, and then finds the case in

the charge of a chapter 7 or chapter 11 trustee who invokes §549

to recover payments made with illegally used cash collateral.

That is exactly what happened in Marathon Petroleum Co., LLC v.

Cohen (In re Delco Oil, Inc.), 599 F.3d 1255 (11th Cir. 2010)

(affirming judgment requiring creditor to return cash to estate

pursuant to §§549(a) and 363(c)(2) arising from debtor in

possession's unauthorized use of cash collateral). Delco Oil is

an example of an appropriate use of §549 by a trustee because the

transfer by the former debtor in possession of the cash

Case 09-01191-nlj    Doc 40    Filed 04/22/11    Entered 04/22/11 09:07:11 Page 15 of 22

collateral would not have been authorized by statute but also would not have been a violation of the automatic stay. A similar example would be the sale of property by a chapter 11 debtor in possession without court permission; such a sale need not be attacked by a §549 action because the transaction is already void under §362. In re BNT Terminals, Inc., 125 B.R. at 971-7. "The Trustee need not void an already void transfer." Id. at 973.[9]

From what has been said, it is also clear that whether the debtor was a "willing participant" in the alleged transfer makes no difference, and does not convert an attempted transfer in violation of the automatic stay into a transfer only voidable by §549. Contra Paige, 413 B.R. at 915. This follows because there is nothing in §362(a) which provides any basis for treating a chapter 7 debtor attempting to transfer property of the estate any differently than a creditor attempting to do the same.

The Tenth Circuit has repeatedly ruled that actions taken in violation of the stay are void ab initio, not merely voidable. Ellis v. Consolidated Diesel Electric Corp., 894 F.2d 371, 372 (10th Cir. 1990) (summary judgment for defendants in product liability action void when it was entered by district court after defendants had filed chapter 11 petitions; plaintiffs' appeal of summary judgment dismissed for lack of properly entered final

---

[9] In the instant case of course, the purported transfer was by a debtor out of possession and in consequence constituted a violation of the stay.

judgment); <u>Franklin Sav. Assoc. v. Office of Thrift Supervision</u>,
31 F.3d 1020, 1022 (10th Cir. 1994) (bill of costs submitted in
district court case postpetition; request for annulment of stay
denied and government required to resubmit bill of costs);
<u>Goldston v. United States (In re Goldston)</u>, 104 F.3d 1198, 1201
(10th Cir. 1997) (IRS assessment in violation of stay during
chapter 11 case was void in subsequent chapter 13 case; "void is
void, whatever the context".  Sanction was for IRS to lose its
secured status.); <u>see</u> <u>Kalb v. Feuerstein</u>, 308 U.S. 433, 438
(1940) (Wisconsin state court did not have jurisdiction to
confirm sheriff's sale and dispossess farmer debtors who had
filed bankruptcy petition).  The Bankruptcy Court for the
District of Utah summarized it well:

> In the Tenth Circuit, actions taken in violation of the
> automatic stay are void ab initio, and knowledge of the
> stay on the part of the offending party is irrelevant.
> As such, they are without legal effect. From the law's
> point of view, they simply did not happen.

<u>Paige</u>, 413 B.R. at 915 (footnotes omitted).

The one arguable exception to this long list of Tenth
Circuit cases is <u>Calder v. Job (In re Calder)</u>, 907 F.2d 953, 956-
57 (10th Cir. 1990).  In that case the debtor engaged in lengthy
state court litigation with a third party who was unaware of the
bankruptcy filing, and it was only after having a judgment
entered against him in the state court matter that debtor Calder
informed the third party that he had been in bankruptcy all along

Case 09-01191-nlj   Doc 40   Filed 04/22/11   Entered 04/22/11 09:07:11 Page 17 of 22

and thus the state court litigation and judgment were all void. In those circumstances, essentially on equitable or "clean hands" grounds, the Tenth Circuit refused to enforce the stay.

Strictly speaking, none of the Tenth Circuit cases involved an out-of-possession debtor who "willingly" violated the automatic stay, as did the Tippetts.[10] So it is conceivable that the Tenth Circuit, faced with exactly these facts, might take the same position as the Tippetts cases. But given the single strand that runs through all the Tenth Circuit cases of declaring stay violations void ab initio, and given the unnecessary and unsupported conceit that the Tippetts cases and their provenance have created, that would seem to be quite unlikely. Particularly is that the case here where an out-of-possession (chapter 7) debtor has acted to cause so much mischief for so many parties.

Nor is the Tenth Circuit likely to yield to other circuits that view stay violations are voidable rather than void. For example, in Sikes, 881 F.2d at 178-79, plaintiffs/appellants had filed a personal injury claim against defendant who had, unknown to plaintiffs, filed a chapter 11 petition. Defendant maneuvered

_____

[10] Although the Paige courts, particularly the bankruptcy court, discussed the effect of an out-of-possession debtor who "willingly participates" in an attempted unauthorized transfer of estate property and stated that in those circumstances the transfer would be voidable by §549, rather than void, 413 B.R. at 913-14 (citing Garcia), the bankruptcy court found that there was no willing participation by the debtor and therefore §549 was not applicable. Id. at 915.

Page 18 of 22

to preclude the modification of the stay to allow the refiling of the complaint until after the statute of limitations had passed. The Fifth Circuit, in a divided ruling, first held that "the term 'void' can only be properly applied to those [transactions] ... that are of no effect whatsoever, mere nullities, ... and therefore incapable of confirmation or ratification [including by annulment]." Id. at 178 (quotation marks and citation omitted). The court also held that the bankruptcy court had modified the stay after the fact, which it could not do if stay violations were void rather than voidable. On that basis, the court held generally that violations of the stay are voidable, not void, and found support for its reasoning in part in the existence of §549.

The Tenth Circuit case law, e.g., Franklin Sav. Assoc. v. Office of Thrift Supervision and In re Goldstein, in which the courts consider as possible but then reject requests to annul the stay, resolves that dilemma. In addition, Calder provides sufficient support for dealing with the one-off case in which a debtor has (or, for that matter, a trustee might have) so misled a party or gamed the system that a rigid application of the principle that violations of the stay are "void" would be unfair.

In Easley v. Pettibone Michigan Corp., 990 F.2d 905 (6th Cir. 1993), plaintiff/appellant filed an action, just days before the statue of limitations was to expire, against defendant/debtor in possession after the latter in 1986 had filed a chapter XI

[sic] petition.  Id. at 907.  Debtor confirmed a plan permitting personal injury actions to go forward, and then removed the Easley action to the United States District Court. There, it moved to dismiss the action based on the fact that the original filing was in violation of the stay.  The district court refused to dismiss the action.  The reorganized debtor then took an interlocutory appeal, asserting that the district court had no jurisdiction over the removed action.  The Sixth Circuit held that the action, filed postpetition, could not be considered commenced until the stay had been modified by the bankruptcy court, and that the reorganized debtor could raise this issue in the removed proceeding in the district court, id. at 908, and that plaintiff's failure to timely refile, when he had been informed of the void filing, cost him his right to sue.  Id. at 912.  The court ruled that "actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances."  Id. at 911.

The Sixth Circuit's position is in practice remarkably similar to that of the Tenth Circuit, as illustrated in part by its favorable citation to Calder.  Thus, despite the use of terms

Case 09-01191-nlj    Doc 40    Filed 04/22/11    Entered 04/22/11 09:07:11 Page 20 of 22

such as "invalid"[11] and "voidable", the Sixth Circuit's position
would not be likely to alter that of the Tenth Circuit.[12]

In any event, Trustee in this case filed a notice of the
bankruptcy filing and a notice of lis pendens in the Los Alamos
County records long before Debtor attempted the transfer of the
property to Joyce Beery.[13]  Thus, were Trustee required to file
an action under §549(a) to recover the half interest in the real
property (which she is not), her claim could not be defeated by
an innocent purchaser defense as provided in §549(c).

> As subsection (a) and (d) make clear, section 549
> concerns avoidance actions by the trustee, not
> transfers that are already void under the automatic
> stay. Subsection (c), which Lusardi invokes, prevents
> such avoidance actions from succeeding against certain
> bona fide purchasers. By its terms, subsection (c)
> creates an exception only to subsection (a). 11 U.S.C.
> § 549(c) (describing transfers that "trustee may not

---

[11] The Fifth Circuit used the same term in <u>Bustamante v.
Cueva (In re Cueva)</u>, 371 F.3d 232, 236 (5th Cir. 2004).

[12] The Sixth Circuit also suggested that treating actions in
violation of the stay as merely voidable would necessitate little
additional effort on a trustee's part than if a transaction were
considered void from the outset.  <u>Easley</u>, at 910.  This adversary
proceeding, and a good part of the proceedings in the underlying
chapter 7 case, amply evidence how erroneous that observation is.

[13] The Court has listed the facts in ¶¶7, 8 and 11 in part
because of Banks' argument that the doctrine of <u>res judicata</u>
means they are not bound by the ruling in AP 97-1059.  Although
Banks were not parties to the litigation, they would have been on
notice of that pending litigation and the judgment arising out of
it.  As the Tenth Circuit case law cited above makes clear,
whether Banks even knew of the litigation, much less participated
in it, is irrelevant, since Debtor's purported transfer was void.
In any event, Joyce Beery was a party to that adversary
proceeding, and Banks took from her.

Case 09-01191-nlj   Doc 40   Filed 04/22/11   Entered 04/22/11 09:07:11 Page 21 of 22

avoid under subsection (a) of this section"). Thus, as [Value T Sales, Inc. v. Mitchell (In re Mitchell), 279 B.R. 839, 841-44 (9th Cir. BAP 2002)] noted, the language and the structure of both section 362 and section 549 support the view that section 549(c) does not create an exception to the automatic stay provision.

40235 Washington Street Corp. v. Lusardi, 329 F.3d 1076, 1081 (9th Cir. 2003). Accord, In re Cueva, 371 F.3d at 236, 238 ("In short, §549(c) is not an exception to the automatic stay imposed by §362...").[14]

**Conclusion**

For the foregoing reasons, the Court finds that Trustee was not bound in any way by §549, including any statute of limitations therein. Therefore the Motion by First National Bank of Santa Fe and Countrywide Bank, FSB for Partial Judgment on the Pleadings as to §549 Avoidance Action Set Forth [in] Counts I and II (doc 26) is not well taken and will be denied.

James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:  April 22, 2011

Copies to:

William J Arland, III                    Clifford C Gramer, Jr
PO Box 1089                              3733 Eubank Blvd NE
Santa Fe, NM 87504-1357                  Albuquerque, NM 87111-3536

---

[14] To be clear, however, both Lusardi and Cueva continue the distinction between creditor-initiated versus debtor-initiated postpetition transactions as the raison d'etre for §549. Lusardi, 329 F.3d at 1081-82; Cueva, 371 F.3d at 236.

Case 09-01191-nlj   Doc 40   Filed 04/22/11   Entered 04/22/11 09:07:11 Page 22 of 22